IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

SARAH J. OLDRIDGE,

      Plaintiff,

v.                                               Case No. 18-1243-JWB

CITY OF WICHITA, KANSAS,

      Defendant.

**MEMORANDUM AND ORDER**

This matter is before the court on Defendant's motion for summary judgment.  (Doc. 69.) The motion has been fully briefed and is ripe for decision.  (Docs. 70, 73, 76, 78, 81, 82, 83, 84, 87, 88.)  The motion is GRANTED for the reasons stated herein.

I.     **Facts**

The following statement of facts is taken from the parties' submissions and the stipulations in the pretrial order.  Factual disputes about immaterial matters are not relevant to the determination before the court.  Therefore, immaterial facts and factual averments that are not supported by the record citations are omitted.

This action involves an employment dispute between Defendant City of Wichita, Kansas, and Plaintiff Sarah Oldridge, who was previously employed as a lieutenant for the City of Wichita Police Department ("WPD").  The WPD employs 600 commissioned police officers and management.  The WPD command staff includes the chief of police, three deputy chiefs, the executive officer, and commissioned officers holding the rank of captain.  WPD maintains its own internal investigations department called the Professional Standards Bureau ("PSB").  The PSB manages investigations into officers that have been accused of violations of WPD policies.  A

complaint against an officer can be filed by another officer, a supervisor, or a citizen. When a complaint is filed, PSB detectives conduct investigations and submit their findings to command staff who ultimately determine whether the officer will be disciplined. (Docs. 70 at 2-3; 73 at 16.)

Plaintiff started her employment with the WPD as an officer in 1997 and resigned in June 2021. Oldridge was initially promoted to detective in 2003, sergeant in 2014, and then lieutenant in 2015. According to Captain Germany, Plaintiff's supervisor, Plaintiff performed well in her position and received great reviews from the community. In early 2018, WPD had openings for the position of captain. At that time, there were approximately 30 lieutenants at WPD and Plaintiff was the only female. When an applicant applied for the captain position, the application was submitted online on the City of Wichita's Neogov portal. According to the stated requirements for the position, an applicant had to have one year of experience in the rank of lieutenant.[1] In completing the online application, the applicant was required to certify that he or she met the stated requirements. On March 5, 2018, Plaintiff applied for the captain position and certified that she had the requisite experience. On March 8, 2018, Chief Gordon Ramsay sent an anonymous survey in order to obtain feedback from the police department regarding the candidates for the positions. Plaintiff began asking questions regarding the role of the survey in the promotions. (Docs. 70 at 4-5; 73 at 3, 5, 16; 78 at 5.)

On March 12, 2018, Plaintiff emailed Triniece Robertson at the City's human resources department ("March 12 email") with eight bullet point questions about how the survey would be used. Plaintiff stated that she was not aware that a survey of department members would be utilized and she wanted to ensure a "fair and consistent process for all candidates." (Doc. 76-3.) Plaintiff

---

[1] This requirement was modified in 2019 so an applicant could certify that he or she would have one year experience "by the time of promotion." (Docs. 73 at 5; 78 at 5.) The application exhibits provided to the court erroneously contain that language although the parties agree that the language was not in the application for the captain position at issue. (*See* Doc. 87-4 at 3.)

asked how the survey results would factor into the overall assessment, how the rankings would be used, and what percentage of the overall scoring of candidates will be comprised from the survey results.   Plaintiff also asked "How will this survey filter out personal or other bias from respondents?"  (*Id.*)  In response, Plaintiff was told that she should refer her questions or concerns to Chief Ramsay because he had sent the information.  (Doc. 76-4.)  Plaintiff then forwarded the email to Chief Ramsay and asked for clarification on the process and her questions.  Chief Ramsay asked Captain Germany, Plaintiff's supervisor, to meet with Plaintiff and discuss his response.  Ramsay told Germany to relay to Plaintiff that he was seeking input from the members of the WPD regarding the candidates because "one of the issues that has been brought to my attention from members of the Department is the lack of input that many of them perceive that they have."  (Doc. 76-5.)  Ramsay valued their additional input because his "historical knowledge of the candidates is comparatively brief."  (*Id.*)  Captain Germany then met with Plaintiff and summarized what Chief Ramsay had told him.  Captain Germany admitted that Chief Ramsay did not provide a direct response to Plaintiff's question regarding bias.  (Germany Depo., Doc. 76-1 at 80:17-81:14.)  He further admitted that most of her questions were not answered.  (Docs. 73 at 10; 78 at 8.)

The City of Wichita coordinated a panel interview process for all of the applicants.  On March 16, 2018, the eleven applicants were interviewed by a panel of four individuals; only one of those individuals was employed by the WPD - Captain Pinkston, Administrative Services Bureau Commander.  The panel members asked the same questions of each applicant and then scored each applicant on a score sheet.  (Doc. 87-2.)  After the interviews by the panel, Plaintiff was ranked 8th out of the 11 applicants.  (Doc. 87-3.)  On April 10, 2018, Plaintiff was informed by Chief Ramsay that she did not score high enough in the panel interviews to move on to the next round.  (Doc. 83-5.)  Notably, the letter stated that the "first phase scoring was based solely on the

panel interview" and that "upon review of the scores you did not score high enough to move to the next phase."  (*Id.*)   The final round of interviews included the top four applicants.[2]   Those interviews were conducted by Chief Ramsay and his deputies.  Chief Ramsay promoted two men to captain on May 5, 2018.  One of the men promoted, Wendell Nicholson, did not have a year of experience as a lieutenant at the time his application was submitted but he did have a year in rank at the time the promotion occurred.  Although Nicholson did not meet the year of experience requirement at application, he did have more seniority than Plaintiff at WPD, additional higher education, and scored higher than Plaintiff on the panel interview.  (Docs. 70 at 5-6; 73 at 5, 16.)

On May 9, 2018, Plaintiff sent an email ("May 9 email") with multiple questions to Chris Bezruki, the City HR Director.  Plaintiff also carbon copied ("cc'd") the following individuals: Triniece Robertson (City HR Specialist), Susan Leiker (City HR EEO investigator), Chief Ramsay, Deputy Chief Troy Livingston, Captain Germany, Captain Chester Pinkston, City Attorney Jennifer Magana, Deputy City Attorney Sharon Dickgrafe, Dan Giroux (Plaintiff's personal counsel), City Manager Robert Layton, and all 28 WPD officers holding the rank of Lieutenant. (Doc. 83-4.)  The May 9 email detailed that Plaintiff had previously sent her March 12 email to Chief Ramsay with questions about the survey but that she did not get a response from the chief. Plaintiff detailed her discussion with Captain Germany regarding the survey and that she was informed that the survey "allowed the chief to gain information about the candidates which the

---

[2] Plaintiff attempts to controvert Defendant's fact regarding the objective process of the panel by stating that Ramsay did not have to follow the recommendations, an unqualified male was promoted, Ramsay met with the panel prior to the interview, and multiple witnesses provided false testimony.  (Doc. 73 at 16-17.)  None of these assertions, however, controverts the facts regarding the process.  Although Ramsay may have had the ultimate decision, the uncontroverted facts are that the individuals who were ranked in the top four by the panel were the only individuals considered by Ramsay.  Moreover, the panel had all of the information regarding the applicants' records, including the applicants' time in rank.  Also, Plaintiff has failed to introduce any evidence showing that Ramsay said anything about the applicants to the panel prior to the interviews.  With respect to alleged false information, the cited paragraphs do not have anything to do with the interview process by the panel.  Therefore, Plaintiff has not controverted Defendant's facts regarding the panel interview process and Plaintiff's ranking after that interview.

respondents may not feel comfortable sharing during a face-to-face conversation." (*Id.* at 1.) Plaintiff stated that Captain Germany did not provide any information regarding all of the questions that she asked.  Plaintiff then received a letter stating that she would not be progressing to the next level of the captain's promotional process.  Plaintiff then reviewed the qualifications required for the captain position, including the requirement of one year at the rank of lieutenant.  Plaintiff then asked several questions regarding the process:

- Given the application would be disqualified without an attached resume, does HR disqualify an application which does not meet the minimum job requirements?
- How was the resume utilized since it was not provided to the interview panel members for review?
- Is the last line of the job posting ("An equivalent combination of experience and training may be considered") intended to supplement the minimum requirements?
- If not intended to supplement the minimum requirements, is the "equivalent combination of experience and training" used in lieu of the minimum job requirements?
- If used in lieu of the minimum job requirements, what constitutes "equivalent combination of experience and training" as it pertained to the recent promotional process for the rank of Police Captain?

(*Id.* at 2.)

Plaintiff explained in her email that her questions were asked because one lieutenant participant did not meet the minimum requirement for time in rank.  Although Plaintiff did not identify Nicholson by name, it was clear that she was speaking of Nicholson based on the dates provided and the identification of this candidate as being promoted to captain.  Although Plaintiff's supervisors agreed that Plaintiff could ask questions regarding the process, Chief Ramsay and other supervisors testified that the May 9 email was inappropriate as Plaintiff deviated from the chain of command in sending the letter to all the 28 lieutenants and other recipients.  (Docs. 70 at 8; 73 at 19.)  Plaintiff testified that she included all of the lieutenants in the email because they "are stakeholders" and she felt they should all understand how the process was supposed to work.

(Oldridge depo., Doc. 76-8 at 278:20-279:4.)  The May 9 email does not include the question regarding "bias" that had previously been submitted to Chief Ramsay on March 19, 2018.[3]

After becoming aware of the email, Nicholson was upset due to Plaintiff's attack on his qualifications for captain.  Nicholson forwarded the email to his wife and friends.  Deputy Chief Givens also sent Plaintiff's email to her spouse and friends.  (Docs 70 at 10; 73 at 19-20.)

On May 14, 2018, Deputy Chief Livingston initiated a complaint against Plaintiff for conduct unbecoming an officer based on the May 9 email.  (Doc. 83-11.)  Plaintiff allegedly violated regulation 3.201 D, which includes conduct that brings WPD "into disrepute, or reflects discredit upon the officer as a member of the Department, or that which impairs the operation or efficiency of the Department or officer."  (Doc. 88-1 at 1.)  The WPD's policy manual details the department's regulations pertaining to professional conduct.  (Doc. 70-26.)  The regulations include a penalty category based on a seriousness level of A through F, with F being the most serious.  (Docs. 73 at 7; 78 at 5.)  Plaintiff was charged with a category D violation.  (Doc. 88-1 at 1.)  The complaint summary states "Per Deputy Chief Livingston, an internal investigation on Lt. Sarah Oldridge will be initiated based on her conduct via a series of e-mails that started with her response to the subject matter 'DC Seilier Retirement and Survey.'  The Survey was in regards to [deputy chief] and captain candidates.  The e-mail was sent to all the police lieutenants, several persons in HR, City Law, and the City Manager.  The e-mail was also sent to what appears to be an attorney outside of the WPD."  (Doc. 83-11 at 1.)  After receiving the complaint, Detective Doshier conducted an investigation that spanned several months.  (Doc. 88-1.)  In investigating

---

[3] Plaintiff objected to Defendant's proposed statement of fact that the email did not include any reference to bias. (Doc. 73 at 19.)  Plaintiff stated that the email specifically asked how the anonymous survey would "filter out bias." *Id.*  The May 9 email, however, does not include that question.  Reviewing the exhibit, Plaintiff refers to her unanswered questions to Chief Ramsay but the email does not include all of the questions from her March 12 email. (Doc. 83-4.)  The last page of the exhibit shows the heading of an email sent on April 4, 2018, to Chief Ramsay, but the text of the email is not included.  In controverting the proposed fact, Plaintiff does not cite to a different exhibit. Therefore, the court is unable to conclude that the May 9 email did in fact include the question regarding "bias."

the complaint, Doshier and Captain Moore interviewed 47 witnesses, including witnesses who were not recipients of the email. Detective Doshier prepared a report regarding the investigation comprised of 191 pages. Detective Doshier testified that she modeled her investigation after one that was undertaken for a similar complaint regarding an email sent by an officer referred to as Sergeant X.[4] She further testified that Nicholson's dates regarding his time as a lieutenant were not a concern for her in conducting the investigation. The report notes that Nicholson had challenged the dates Plaintiff identified in the May 9 email. (Docs. 73 at 10; 78 at 8.) The report states that it "was determined that Captain Nicholson's dates are his 'promotion dates' and Lieutenant Oldridge had referenced his 'effective dates'" in her email. (Doc. 88-1 at 33.) In any event, it is undisputed that Nicholson had not been in the position of lieutenant for one year at the time of his application.

During the investigation, witnesses were asked whether they would have sent an email similar to the one Plaintiff sent. Almost all of the witnesses responded that they would not. Plaintiff takes issue with the question posed to the witnesses because she believes that they were not provided with the full circumstances surrounding the email, such as HR instructing her to ask Chief Ramsay, that City Manager Layton testified that the questions should be answered, and that her concerns regarding the time in rank were correct. Plaintiff asserts that the witnesses may have responded differently had they been provided additional information. (Docs. 73 at 10-11; 78 at 8.)

The report also provides significant detail regarding the investigation, including specific responses from various witnesses. The report extensively discusses the survey, Plaintiff's belief that the hiring process was discriminatory, and includes various opinions from officers as to whether Plaintiff's email was an EEO complaint. Notably, neither party defines an EEO complaint

---

[4] The parties are not utilizing the officer's name for privacy concerns. The court has previously allowed the records regarding Sergeant X's discipline to be filed under seal. (Doc. 80.)

but it appears to be an internal complaint with the City.  (Docs. 70 at 8; 73 at 28; 88-1 at 21.)[5]

Both Plaintiff and Defendant cite to various statements by witnesses concerning the propriety of

Plaintiff's conduct and the intent of the email.  Some witnesses felt that the conduct did not deserve

an investigation while most witnesses thought that the email should not have been sent to all of

the recipients.  (Docs. 73 at 14-15; 78 at 8-9.)

On December 11, 2018, after being interviewed by Detective Doshier with PSB, Nicholson

and Givens received "coaching/mentoring" and no disciplinary action for their actions in

forwarding Plaintiff's email to several individuals, including those outside of the WPD and City

of Wichita.  (Docs. 82-2; 82-4.)  The coaching form states that Doshier met with Nicholson and

Givens and told them that forwarding the e-mail outside of the agency was not acceptable.  (*Id.*)

On December 26, 2018, although Plaintiff was initially charged with a category D

violation, Chief Ramsay sustained the complaint for conduct unbecoming an officer under

Regulation 3.204 (C) and issued discipline in the form of a 1-day suspension.  (Docs. 70 at 10; 73

at 20; 83-9.)  Plaintiff alleges that the investigation and suspension was in retaliation for protected

conduct.  In response, Defendant argues that the investigation and discipline were not retaliation,

that Plaintiff violated the regulation, and that Plaintiff received similar discipline to Sergeant X.

In 2016, Sergeant X sent an email to members of his SWAT team, his subordinates, and

his supervisor expressing anger about Chief Ramsay's decision to remove this officer from the

SWAT team.  Sergeant X was alleged to have violated Regulation 3.204 (C) pertaining to conduct

unbecoming an officer, which states that "each member of the Department shall contribute his/her

part in maintaining Departmental integrity, order, and discipline."  (Doc. 84-3 at 1.)  The

---

[5] There are also no facts as to what conduct is covered by an EEO complaint.  Plaintiff has described the WPD's discrimination policy as "a failure to treat all persons equally where there is no reasonable distinction...between those favored and not favored."  (Doc. 88-1 at 145.)  This appears to be consistent with the definition of discrimination contained in the report and taken from "Policy 207 Equal Employment Opportunity."  (*Id.* at 186.)

investigation by PSB involved an interview of Sergeant X and a review of the records. Following

an investigation, Sergeant X was issued discipline in the form of a 1-day suspension. The report

detailing the investigation was ten pages long. (*Id.*) After being informed of his discipline,

Sergeant X filed a grievance. The discipline was reduced to a written reprimand after the grievance

procedure. (Doc. 84-4.)

On May 30, 2018, Plaintiff filed a charge with the Equal Employment Opportunity

Commission raising gender discrimination and retaliation related to the failure to promote her to

captain. (Doc. 76-16.) Specifically, Plaintiff alleged that a lesser qualified male was promoted to

captain after she questioned the WPD's promotion procedure. Plaintiff stated that she was

informed on May 15, 2018, that she was being investigated after she sent the May 9 email. Plaintiff

believed that she was denied a promotion because of her sex and that she was disciplined in

retaliation for complaining about a violation of Title VII. (*Id.*) On June 1, 2018, the EEOC issued

a notice to sue letter and dismissed her complaint. (Doc. 76-17.)

On March 7, 2019, Plaintiff filed another charge raising a claim of retaliation. (Doc. 76-

18.) On February 22, 2021, the Kansas Human Rights Commission issued a right to sue letter.

(Doc. 76-19.) A pretrial order was entered in this case on July 26, 2021. (Doc. 62.) According to

the pretrial order, Plaintiff has alleged two claims under both Title VII, 42 U.S.C. § 2000e and the

Kansas Act Against Discrimination ("KAAD"), K.S.A. 44-1001. Those include gender

discrimination due to the denial of her promotion to captain and retaliation after engaging in

protected activity. Defendant City of Wichita has moved for summary judgment on both claims.[6]

---

[6] Notably, although both theories are set forth in the pretrial order, Plaintiff's brief states that this is a Title VII action and does not address her KAAD claims. (*See* Doc. 73 at 1.) Defendant has moved for summary judgment on all claims. (Doc. 70.) The Tenth Circuit has held that the same standard applies to Title VII and KAAD discrimination claims and neither party suggests that the KAAD claims are analyzed under a different standard. *Singh v. Cordle*, 936 F.3d 1022, 1037 (10th Cir. 2019). Therefore, the court will analyze the claims under Title VII throughout this order.

## II.    Standard

Summary judgment is appropriate if the moving party demonstrates that there is no genuine dispute as to any material fact, and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  A fact is "material" when it is essential to the claim, and the issues of fact are "genuine" if the proffered evidence permits a reasonable jury to decide the issue in either party's favor.  *Haynes v. Level 3 Commc'ns*, 456 F.3d 1215, 1219 (10th Cir. 2006).  The movant bears the initial burden of proof and must show the lack of evidence on an essential element of the claim.  *Thom v. Bristol—Myers Squibb Co*., 353 F.3d 848, 851 (10th Cir. 2004) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).  The nonmovant must then bring forth specific facts showing a genuine issue for trial.  *Garrison v. Gambro, Inc*., 428 F.3d 933, 935 (10th Cir. 2005).  Conclusory allegations are not sufficient to create a dispute as to an issue of material fact.  *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).  The court views all evidence and reasonable inferences in the light most favorable to the nonmoving party.  *LifeWise Master Funding v. Telebank*, 374 F.3d 917, 927 (10th Cir. 2004).

## III.    Analysis

### A.    Gender Discrimination

Plaintiff claims that Defendant is liable for gender discrimination after she was denied the promotion to captain and an allegedly unqualified male was promoted instead.[7]  Plaintiff asserts that her gender was a motivating factor in the decision not to promote her.  (Doc. 62 at 13-14.) When a plaintiff does not offer direct evidence of discrimination, as in this case, her claim of gender discrimination is evaluated under the *McDonnell Douglas Corp. v. Green,* 411 U.S. 792,

---

[7] Defendant generally refers to allegations of gender discrimination contained in Plaintiff's amended complaint and asserts that they fail to establish a basis for a Title VII claim.  (Doc. 78 at 13.)  At this stage of the proceeding, the pretrial order controls.  D. Kan. R.  16.2(b).  According to the pretrial order, Plaintiff's claim of gender discrimination is based on a failure to promote.  (Doc. 62 at 13.)

804, 804 (1973), burden shifting framework. *Tabor v. Hilti, Inc.*, 703 F.3d 1206, 1216 (10th Cir. 2013). Plaintiff carries the initial burden of establishing a prima facie case although the burden is not onerous at this stage. *Id.* To state a prima facie case of discrimination, Plaintiff must demonstrate by a preponderance of the evidence that "(1) she belongs to a protected class; (2) she applied for an available position for which she was qualified; (3) she 'was rejected under circumstances which give rise to an inference of unlawful discrimination.'" *Id.* (quoting *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)). *See also id.* at n. 4 (discussing the Tenth Circuit's preference for the three part test set forth in *Burdine* instead of the older four part test). If Plaintiff states a prima facie case, the burden shifts to Defendant to proffer "a legitimate non-discriminatory purpose for the adverse employment action." *Id.* at 1216-17 (citation omitted). If Defendant puts forth this evidence, "Plaintiff will avoid summary judgment only if she shows her sex 'was a determinative factor in the ... employment decision, or show[s] the [employer's] explanation for its action was merely pretext.'" *Id.* (quoting *E.E.O.C. v. Horizon/CMS Healthcare Corp.*, 220 F.3d 1184, 1191 (10th Cir. 2000)). A plaintiff shows pretext by demonstrating "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted nondiscriminatory reasons." *Swackhammer v. Sprint/United Mgmt. Co.*, 493 F.3d 1160, 1167 (10th Cir. 2007).

Here, Defendant argues that Plaintiff has failed to meet her minimal burden of establishing a prima facie case because Defendant utilized an objective procedure in the application process and Plaintiff simply did not make the cut. In response, Plaintiff argues that she is able to meet her initial burden because Nicholson was promoted even though he lied (according to Plaintiff) on his

11

application regarding his experience and he did not meet the published one-year experience requirement as a lieutenant.  In reply, Defendant asserts that Nicholson's certification on his application regarding his experience is not evidence of gender discrimination as the interview procedure was entirely objective and Plaintiff has no evidence that any panel member's decision was motivated by sex.

Plaintiff's burden here is minimal but she must show that she was rejected under circumstances that give rise to an inference of unlawful discrimination.  Plaintiff's evidence at this stage does not meet that standard.  Even if it did, Defendant has offered a legitimate non-discriminatory purpose for failing to promote Plaintiff — she did not fall within the top four applicants after being ranked by the panel members during the objective interview process — and Plaintiff has not shown that the explanation is a pretext for discrimination.

Plaintiff spends considerable time arguing that the fact that a male lieutenant received the promotion instead of her when he did not have the requisite time in rank of lieutenant is evidence of discrimination and pretext.  Plaintiff ignores, however, that the interview process included a panel of individuals who interviewed each applicant and then ranked those applicants using various factors.  Moreover, although Plaintiff complained about the use of the survey in the hiring process, there is no evidence that the survey sent out by the Chief was used by the panel in ranking the applicants.  Plaintiff sets forth no facts to suggest that anything about the panel interview process was tainted with discrimination.[8]  Notably, the materials provided to the panel members included information concerning each applicant's record.  With respect to Nicholson, the time in rank for

---

[8] Plaintiff suggests that Chief Ramsay somehow tainted the process when he met with the panel prior to the interviews by voicing his preferences.  (Doc. 73 at 17.)  The exhibit Plaintiff cites in support of this statement simply states that Chief Ramsay met with the panel.  (Doc. 76-20.)  Plaintiff's assertion as to what occurred during this time period is pure speculation.

each position is detailed, including the date of Nicholson's promotion to lieutenant and that he had "11 mos" of time in that rank.  (Doc. 87-1 at 9.)

Plaintiff urges the court to find that Defendant's actions here in promoting Nicholson over Plaintiff was discriminatory and that Defendant's reason was pretext for discrimination.  A judge's role "is to prevent intentional discriminatory hiring practices, not to act as a 'super personnel department,' second guessing employers' honestly held (even if erroneous) business judgments." *Hamilton v. Okla. City Univ.*, 563 F. App'x 597, 604 (10th Cir. 2014) (citation omitted).  Courts are to proceed with caution when considering the merits of candidates for employment.  *Id.* at 602 (citing *Jaramillo v. Colo. Judicial Dep't*, 427 F.3d 1303, 1308 (10th Cir.2005) (per curiam)).  A court can "draw an inference of pretext where the facts assure us that the plaintiff is better qualified than the other candidates for the position."  *Id.* (quoting *Santana v. City & Cnty. of Denver*, 488 F.3d 860, 865 (10th Cir. 2007)). But "minor differences between a plaintiff's qualifications and those of a successful applicant are not sufficient to show pretext." *Id.* (quoting *Jaramillo*, 427 F.3d at 1308–09).

Here, Plaintiff has not shown that she is better qualified than the other candidates, or specifically Nicholson, for the position of captain.  Although Plaintiff had been in the position of lieutenant for more than two years, she did not have the same number of years of experience as Nicholson.  Notably, Nicholson also had a master's degree in criminal justice in comparison to Plaintiff's bachelor's degree in criminal justice.  (Doc. 87-1 at 9.)  Nicholson also scored higher than Plaintiff in the panel interviews.  After the interviews, the panel members scored each applicant on oral communication, planning and organization, problem solving, job/technical knowledge, judgment, leadership, and overall impact.  (Doc. 87-2.)  These scores were based on questions uniformly asked of all applicants.  (Doc. 87-1.)  Plaintiff has not shown pretext based

on Nicholson's qualifications. *See Petersen v. Utah Dep't of Corr.*, 301 F.3d 1182, 1190–91 (10th Cir. 2002) (finding that there was no evidence of pretext when the plaintiff's evaluation score was seventh among the applicants) (citing *Bullington v. United Air Lines, Inc.*, 186 F.3d 1301, 1317-18 (10th Cir. 1999) (a plaintiff's own opinions regarding her qualifications do not give rise to a dispute of material fact regarding pretext).

Plaintiff further argues that the court can infer discrimination because Nicholson was not disciplined after certifying that he had one year of experience on his application. Plaintiff asserts that this conduct is subject to discipline. There is no indication, however, that a complaint was ever filed against Nicholson or that any command staff believed that Nicholson's statement would subject him to discipline. Rather, Captain Pinkston testified that Nicholson "would meet the qualification" prior to the promotion. (Pinkston Depo., Doc. 70-12 at 49:1-9.) Moreover, as noted previously, the panel was aware that Nicholson only had 11 months of time as lieutenant at the time of the interviews. Defendant's failure to strictly enforce the one-year requirement that was in the application, in and of itself, does not evidence pretext for discrimination in light of the objective process of the panel interviews for the promotion. It is clear from the ranking of the individuals by the panel that Plaintiff still would not have moved on in the interview process even if Nicholson's application could not have been considered.

Plaintiff also argues that Defendant's treatment of her following the May 9 email is evidence of pretext. Plaintiff's argument ignores the application process for the promotion. Although conduct subsequent to the failure to promote could establish pretext in certain cases, Defendant's reason for failing to promote Plaintiff was because she did not rank high enough to move on in the process after the panel interviews. Plaintiff's arguments regarding her May 9 email, investigation, and discipline, do not evidence that Defendant's proffered reason is pretext for

discrimination in light of the objective process of the panel interviews and the fact that the ranking of the applicants occurred weeks before those events.

Plaintiff also argues that the difference in treatment pertaining to the internal investigation and discipline between her and Sergeant X is evidence of pretext. Although it is apparent that there were differences in the scope of the investigation and Sergeant X was able to reduce his discipline through the grievance procedure, Plaintiff fails to show how this difference of treatment, which occurred *after* the hiring process and involved a disciplinary procedure, shows that Defendant's stated reason for its employment decision was pretext for gender discrimination.[9] The hiring process involved a panel ranking the applicants and only the top four applicants continued on in the process; Plaintiff offers no evidence that any part of the panel process was tainted by discriminatory bias.

Although Nicholson did not have one year of experience as lieutenant at the time of application and Plaintiff was subjected to an investigation and discipline regarding her May 9 email, Plaintiff has not established that Defendant's reason for failing to promote Plaintiff is a pretext for discrimination. Therefore, Defendant's motion for summary judgment on Plaintiff's claim of gender discrimination is granted.

### B.    Retaliation

---

[9] Plaintiff's argument regarding pretext appears to apply to both her gender discrimination and her retaliation claim. (Doc. 73 at 25.) While this argument concerning Sergeant X would be relevant to an argument regarding pretext with respect to her retaliation claim, it is difficult to tie this argument to evidence of pretext with respect to the gender discrimination claim. In the context of pretext, differential treatment is when a plaintiff "demonstrates that the employer treated [the plaintiff] differently from other similarly-situated employees who violated work rules of comparable seriousness in order to show that the employer failed to follow typical company practice in its treatment of the plaintiff." *Swackhammer v. Sprint/United Mgmt. Co.*, 493 F.3d 1160, 1167–68 (10th Cir. 2007). Here, the alleged differential treatment does not involve past practices concerning the promotional process. Therefore, the alleged differential treatment regarding discipline on a single occasion does not support the conclusion that the decision regarding the promotion was pretext for discrimination.

Next, Plaintiff alleges that Defendant retaliated against her for engaging in protected activity.  Like the gender discrimination claim, Plaintiff is proceeding under the burden-shifting framework in *McDonnell Douglas* to establish her retaliation claim.  Under that framework, Plaintiff must first establish a prima facie case of retaliation by showing 1) that she engaged in protected opposition to discrimination, 2) "that a reasonable employee would have found the challenged action materially adverse," and 3) "that a causal connection exists between the protected activity and the materially adverse action." *Hansen v. SkyWest Airlines*, 844 F.3d 914, 925 (10th Cir. 2016) (quoting *EEOC v. PVNF, L.L.C.*, 487 F.3d 790, 803 (10th Cir. 2007)).  After establishing her prima facie case, the burden shifts to Defendant "to come forward with a legitimate, non-retaliatory rationale for the adverse employment action.  If the defendant does so, the plaintiff must show that the defendant's proffered rationale is pretextual." *Id.* (quoting *Lounds v. Lincare, Inc.*, 812 F.3d 1208, 1234 (10th Cir. 2015)).  Pretext can be shown by providing direct evidence discrediting the proffered rationale, that Plaintiff was treated differently from other officers who were similarly situated, or it can be inferred "from evidence revealing 'weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" in Defendant's explanation. *Id.*

Defendant moves for summary judgment on the basis that Plaintiff's emails were not protected activity; Plaintiff did not sustain an adverse employment action; and that Plaintiff has not shown that there is any causal connection between the protected activity of filing an EEOC charge and an adverse action.  In response, Plaintiff argues that the emails were protected activity, she has established a prima facie case of retaliation, and evidence of pretext.

### 1.    Protected Activity

Plaintiff must meet an initial hurdle of showing that she engaged in protected activity.  To engage in protected opposition to discrimination, Plaintiff must oppose an employment practice

made unlawful by Title VII.  *Faragalla v. Douglas County Sch. Dist. RE 1, et al*., 411 F. App'x. 140, 148 (10th Cir. 2011).  Title VII makes it unlawful for an employer "to discriminate against any individual ... because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1).  A plaintiff therefore engages in protected activity if she opposes employment discrimination based on one of these protected categories.  *McDonald-Cuba v. Santa Fe Protective Servs., Inc*., 644 F.3d 1096, 1102 (10th Cir. 2011) ("Protected activity consists of activity opposing or complaining about discrimination by the employer based on race, color, religion, gender, or national origin."); *Faragalla*, 411 F. App'x. at 148.  The filing of a formal charge constitutes protected activity as well as voicing informal complaints to superiors.  *E.E.O.C. v. PVNF, L.L.C*., 487 F.3d 790, 804 (10th Cir. 2007) (citing *Hertz v. Luzenac America, Inc*., 370 F.3d 1014, 1015 (10th Cir. 2004)).  "Although no magic words are required, to qualify as protected opposition the employee must convey to the employer his or her concern that the employer has engaged in a practice made unlawful by [Title VII]."  *Hinds v. Sprint/United Mgmt. Co*., 523 F.3d 1187, 1203 (10th Cir. 2008).  A "vague reference to discrimination...without any indication that this misconduct was motivated by [a] category protected by Title VII[] does not constitute protected activity and will not support a retaliation claim."  *Anderson v. Acad. Sch. Dist. 20*, 122 F. App'x 912, 916 (10th Cir. 2004).

Turning to the complaints at issue, Plaintiff argues that the following emails were protected activity: her March 12, 2018, email to Triniece Robertson with questions regarding the survey; her March 19 and April 4 emails to Ramsey, Germany, Livingston, and Chris Bezruki in which she forwarded the HR email regarding the survey and sought a response from Ramsey; her May 9 email to Bezruki and numerous recipients in which she complained that she had never received a response from Ramsey and complained about the promotion of Nicholson.

First Three Emails.  The first three emails were substantively identical so those will be addressed together.  In those first three emails, Plaintiff asked several questions regarding the purpose of the survey in the hiring process.  Plaintiff argues that these emails constitute protected activity because she complained about bias in the procedure asking "how will this survey filter out personal or other bias from respondents?"  (Doc. 76-3.)  Defendant argues that this question is not sufficient to constitute protected activity because it only used the term "bias" and did not complain about gender bias.  In her brief, Plaintiff does not explain how the use of the term "bias" puts Defendant on notice that she is complaining about a practice made unlawful by Title VII.

In order to be protected activity, Plaintiff must convey a concern that her employer engaged in unlawful discrimination under Title VII.  Plaintiff's vague reference to "bias" is not sufficient.  The Tenth Circuit has repeatedly held that vague assertions of discrimination or harassment are not sufficient and that the statute requires more.  *See, e.g., Lamb v. Montrose Cty. Sheriff's Off.*, No. 19-1275, 2022 WL 487105, at *4 (10th Cir. Feb. 17, 2022).  Rather, there must be "some perceptible connection to the employer's alleged illegal employment practice," and "it must be possible to discern from the context of the statement that the employee opposes an unlawful employment practice."  *Id.*  (quoting *Curay-Cramer v. Ursuline Acad. of Wilmington, Del., Inc.*, 450 F.3d 130, 135 (3d Cir. 2006)).  Here, Plaintiff merely asked how the survey would filter out personal or other bias from the respondents.  Viewing the emails in a light most favorable to Plaintiff, it is not possible to discern that Plaintiff is stating that Defendant has engaged in gender discrimination by utilizing the survey or due to questions that are included in the survey.  Rather, Plaintiff could be complaining about any type of bias.

Plaintiff offers no authority in support of her position that this question complains about an unlawful employment practice.  Bias is defined as: "A mental inclination or tendency; prejudice;

predilection."  Bias, Black's Law Dictionary (11th ed. 2019).  Based on its definition, although a personal bias could be due to gender or race, it is not limited to those categories.  It could simply be due to a personal hostility towards a person based on a past relationship, such as witness being biased toward one party in a case.

The court finds that these emails do not constitute protected activity as they cannot be read to complain about unlawful discrimination in violation of Title VII.  *See Anderson*, 122 F. App'x at 916 (vague reference to discrimination does not constitute protected activity); *Faragalla*, 411 F. App'x at 148 (complaint of discriminatory and retaliatory conduct insufficient because there was no reference to a protected category); *Petersen*, 301 F.3d at 1188.

May 9 Email.  Next, Plaintiff argues that her May 9 email constitutes protected activity. The May 9 email is addressed to Chris Bezruki in HR and cc'd to Ramsay, Livingston, Germany, attorneys for the City of Wichita, Plaintiff's personal attorney, the City Manager, and all the WPD Lieutenants.  In the email, Plaintiff informs Bezruki about her previous emails in which she questioned the survey utilized in the process but did not get a sufficient response.  Plaintiff states that she has been notified that she will not continue on in the hiring process, but that she still wants answers to her original questions and now has additional questions.  Plaintiff then sets forth the HR job description for captain and the requirement about time in rank noting that the description did provide that "an equivalent combination of experience and training may be considered."  (Doc. 83-4 at 1.)  Plaintiff asks several questions about the requirements, including whether an applicant would be disqualified if he or she did not meet the minimum job requirements or if the statement regarding equivalent combination could supplement the minimum requirements.  Plaintiff then explains that she was asking those questions because a lieutenant who participated in the process and was going to be promoted to the rank of captain (Nicholson) did not meet the minimum

requirement of time in rank.  Further, another lieutenant, who did meet the minimum requirement of time in rank but did not meet the educational requirement, was "denied the opportunity to participate in the process."  (*Id.* at 2.)  Plaintiff stated that her "inquiry involves no ill will toward any lieutenant who participated in the process.  It is not intended to disparage anyone but to clarify expectations and advocate for improvement of disparities, transparency in the process, equal opportunity, consistency and fairness for all current and applicants who participate in the promotional process."  (*Id.*)

Plaintiff argues that her May 9 email constitutes protected activity because she complained about a male being selected over her, she included her attorney on her email, and because some individuals employed by Defendant interpreted it as protected activity.  Contrary to Plaintiff's position, however, her May 9 email does not express that she is opposing an unlawful employment practice.

Initially, although Plaintiff argues that her email complains about a male being selected instead of a female, her email cannot be read so liberally.  Rather, Plaintiff's emails include general complaints about the entire process.  Plaintiff complains that her previous emails were ignored by Ramsay; but again, those emails did not oppose an unlawful employment practice nor did they contend that she was discriminated against due to her gender and Plaintiff does not suggest in the May 9 email that Ramsay has ignored her or mistreated her because she is a woman.  Plaintiff also complains that Nicholson (Plaintiff does not refer to him by name in the email) was promoted in the process even though he did not have the requisite time in rank.  Plaintiff, however, does not assert that he was promoted because he is a man nor does she state that she was not selected because she is a woman.  Rather, Plaintiff complains that this selection was unfair because another

man was unable to apply even though he did not meet the minimum qualifications.[10]  Reviewing

the email in a light most favorable to Plaintiff, the email simply complains about the process and

Ramsay's lack of response to her questions without any indication that Plaintiff believes that these

actions were taken because she is a woman.  "[A]n employee's complaints regarding unfair

treatment, no matter how unconscionable, cannot be 'protected opposition to discrimination'

unless the basis for the alleged unfair treatment is some form of unlawful discrimination in

violation of Title VII."  *Faragalla,* 411 F. App'x at 148.

Plaintiff also asserts that an "attorney letter" can be protected activity and cites to *O'Neal*

*v. Ferguson Const. Co*., 237 F.3d 1248 (10th Cir. 2001).  While that case stands for the proposition

that an attorney can engage in protected activity on behalf of his client, that is not what occurred

here.  Moreover, in *O'Neal*, it was clear that the letter was protected activity in that the attorney

complained about a retaliatory transfer after his client filed an EEOC charge. *O'Neal*, 237 F.3d at

1251-52.  In Plaintiff's May 9 email, there is no reference to gender discrimination.  Although

Plaintiff is a female and Nicholson is a male, Plaintiff does not assert in the May 9 email that there

was unlawful discrimination in the hiring process as discussed above.

Plaintiff also cites to *Nguyen v. Gambro BCT, Inc*., 242 F. App'x 483, 491 (10th Cir. 2007)

for the proposition that "an employee's notification to her employer that she has retained an

attorney due to discrimination is protected activity."  (Doc. 73 at 25-26.)  In *Nguyen*, the court of

appeals affirmed the trial court's grant of summary judgment and determined that the plaintiff did

not tell her employer about hiring an attorney prior to her termination.  Therefore, her firing was

---

[10] Plaintiff suggests that this is also protected activity because she is complaining about discrimination on behalf of
this lieutenant.  (Doc. 73 at 29.)  But Plaintiff makes no attempt to explain how this is the result of unlawful
discrimination as both lieutenants were men.  Moreover, the email makes no mention of any unlawful employment
practice.

not retaliatory for this statement. *Nguyen* is not persuasive here as Plaintiff's email does not state that she is hiring an attorney due to discrimination by her employer.

Finally, Plaintiff argues that the May 9 email is protected activity because certain recipients interpreted the email as a complaint of illegal discrimination. (Doc. 73 at 28.) Plaintiff, however, fails to cite authority to show that this is sufficient where the underlying email does not constitute protected activity. Additionally, Plaintiff fails to identify any recipient who interpreted her email as a complaint of an unlawful employment action based on gender discrimination or other unlawful discrimination under Title VII[11] and there is no indication that these individuals were decisionmakers with respect to the ongoing disciplinary investigation. *See Petersen*, 301 F.3d at 1188–89 (10th Cir. 2002) (discussing that superior must know that opposition to the employment action was motivated by a belief that employer was engaging in discrimination prohibited by Title VII). Viewing the evidence in a light most favorable to Plaintiff, she complained of unfair treatment due to Ramsay's failure to adequately respond to her questions and Nicholson's promotion. Although Plaintiff used the terms "equal opportunity," "disparities," and "fairness" regarding the process, she did not suggest in her email that she was being discriminated against because of her gender. (Doc. 83-4.) The court finds that Plaintiff's May 9 email did not constitute protected activity.[12] *See Faragalla*, 411 F. App'x. at 148; *Lucas v. Off. of Colo. State Pub. Def.*, 705 F. App'x 700, 706 (10th Cir. 2017).

<u>EEOC Charge.</u> Finally, Defendant concedes that the EEOC charge filed on May 30, 2018, constitutes protected activity. Defendant, however, asserts that Plaintiff has not shown that any

---

[11] Reviewing the cited testimony, none of the individuals discuss gender discrimination. Rather, they generally refer to "a lawsuit," "wrongdoing," and retaliation. (Doc. 73 at 28.) Deputy Chief Salcido believed that Plaintiff may have been making an EEO complaint but did not know the process. As discussed previously, neither party attempts to define what this means and based on Defendant's EEO policy definitions, discrimination means differential treatment.

[12] For clarity, even if Plaintiff's May 9 email included the March 12 email as an attachment, it would not constitute protected activity for the reasons previously discussed in this order.

WPD supervisors or employees knew about the charge. "An employer's action against an employee cannot be because of that employee's protected opposition unless the employer knows the employee has engaged in protected opposition." *Petersen*, 301 F.3d at 1188-89 (citing *Williams v. Rice*, 983 F.2d 177, 181 (10th Cir. 1993) ("plaintiff must show that the individual who took adverse action against him knew of the employee's protected activity")). Retaliation is prohibited under § 2000e–3(a) only if the superior retaliating against Plaintiff knew about her protected activity. *Id.* Plaintiff cannot establish causation without showing that the decisionmakers had knowledge of the EEOC charge.

In her response brief, Plaintiff makes no attempt to show that a decisionmaker had knowledge of her EEOC charge. Rather, Plaintiff only cites the fact that she made the charge. Plaintiff's brief is then completely silent regarding the charge, whether any decisionmaker had notice, and what adverse actions were taken because of the charge. Therefore, the court finds that Plaintiff has failed to establish a prima facie case of retaliation with respect to the filing of her EEOC charge.

Defendant is entitled to summary judgment on Plaintiff's claim of retaliation.

## IV.    Conclusion

Defendant's motion for summary judgment (Doc. 69) is GRANTED. The clerk is directed to enter judgment of dismissal in favor of Defendant.

IT IS SO ORDERED. Dated this 10th day of May 2022.

_s/ John W. Broomes_____
JOHN W. BROOMES
UNITED STATES DISTRICT JUDGE